UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BARBARA A. BURNS ET AL.,

                    Plaintiffs,                    10 Civ. 4534

     -against-                                      OPINION

DELAWARE CHARTER GUARANTEE & TRUST
COMPANY D/B/A PRINCIPAL TRUST COMPANY,
and PRINCIPAL FINANCIAL GROUP, INC.,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6|8|11


          Attorneys for Plaintiffs

          DORFMAN KNOEBEL & CONWAY LLP
          51 North Broadway
          Nyack, NY  10960
          By:  Burton Dorfman, Esq.


          Attorneys for Defendants

          SIDLEY AUSTIN LLP
          787 Seventh Avenue
          New York, NY  10019
          By:  Lynn Ann Dummett, Esq.
               Joel S. Feldman, Esq.
               Kevin M. Fee, Esq.
               Michael C. Adolina, Esq.

**Sweet, D.J.**

Defendants Principal Financial Group, Inc. ("Principal Financial") and Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Principal Trust") (collectively, the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint[1] ("AC") filed by Plaintiffs Barbara Burns, James Burns, Daniel Mancuso, Kevin Romano, Robert Sheridan, Michelle Venema, Karen Mancuso, Joanne Romano, Michael Heaphy, and Suzanne Heaphy ("Plaintiffs"). Upon the conclusions set forth below, the motion is granted in part and denied in part.

The Plaintiffs and the Defendants entered into Self-Directed Individual Retirement Trust Agreements ("SIRTA" or "Trust Agreement") to establish traditional individual retirement accounts ("IRAs"). The Plaintiffs directed investment in the Westgate Fund which proved to be a Ponzi scheme operated by James Nicholson ("Nicholson"). At issue is the adequacy of the eight claims set forth in the AC, alleging

---

[1] Plaintiffs erroneously refer to their first Amended Complaint as the Second Amended Complaint.

breach of contract, negligence, gross negligence, breach of
fiduciary duty, unjust enrichment, negligent misrepresentation,
fraud, and aiding and abetting fraud.

I.   **Prior Proceedings**

    This case was removed from New York State Supreme
Court for Rockland County on June 9, 2010.  The Plaintiffs filed
their AC on July 21, 2010.  The Defendants moved to dismiss the
AC on August 31, 2010, and the motion to dismiss was heard and
marked fully submitted on December 8, 2010.  This court recently
granted in part and denied in part a similar motion to dismiss
in the related case of Grund v. Delaware Charter Guarantee &
Trust Co., No. 09 Civ. 8025, 2011 WL 2118754 (S.D.N.Y. May 26,
2011).

    According to the AC, the Plaintiffs entered into a
standardized form contract for a self-directed IRA that was
drafted by Defendants, which in turn was copied in part from a
federal form contract created by the Internal Revenue Service
("IRS").  See IRS Form 5305A; AC ¶¶ 62, 64, 67, 92, 94, 123,
125.  The form, as promulgated by the IRS, sets forth a number

3

of provisions which must be included to create a valid

"Traditional Individual Retirement Custodial Account" under §

408 of the Internal Revenue Code ("IRC").  Under IRC § 408, the

custodian/trustee has a duty to acquire and hold particular

investments; to keep custody of investments; to refrain from

commingling the investments of each account with any other

property; to deposit assets of accounts requiring safekeeping in

an adequate vault; to determine the assets held by it in trust

and the value of such assets at least once in each calendar year

and no more than 18 months after the preceding valuation; and to

receive, issue receipts for, and safely keep securities.  See

Treas. Reg. 1.408-2(e).  The SIRTA, written by Defendants, was

signed by Plaintiffs.  AC ¶¶ 64, 94, 125.


According to the AC, while Defendants were collecting

fees from Plaintiffs for services which they allegedly failed to

perform, they were allegedly permitting an unauthorized person,

Nicholson, to take a percentage of the retirement money

belonging to Plaintiffs.  AC ¶¶ 32, 36, 40, 47.  Plaintiffs

believed that Defendants were upholding their contractual

obligations, adhering to their duties as custodians/trustees,

and protecting Plaintiffs' retirement money, and Defendants are

4

alleged to have negligently or intentionally failed to perform
many of their contractual and fiduciary obligations, as well as
provided false information to Plaintiffs and aided Nicholson's
fraud.  AC ¶¶ 32, 36, 38-46.

Defendants are alleged to have willfully avoided
uncovering Nicholson's scheme because they were benefitting from
substantial fees gained though their relationship with him and
Westgate.  AC ¶¶ 40, 41, 44, 45.

According to the AC, Plaintiffs trusted Defendants to
perform their duties as trustees/custodians of their IRA
accounts but, instead of performing them, Defendants delegated
much of the control over the IRA accounts to Nicholson and were
willfully blind to the consequences of that action.  This
delegation was undertaken despite Nicholson's background and the
fact that he was not an eligible party to any of the necessary
IRA contracts required by federal law for the management of IRA
and pension funds.  Although they were in a unique position as a
large, established IRA custodian and trustee, Defendants
allegedly failed to discover Nicholson's fraud, failed in their

duties as trustees, provided false statements to their clients, and breached their contractual duties.

## II.   **The Applicable Standard**

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

Therefore, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

## III. **Principal Financial is Not Dismissed**

The Defendants have urged that the AC contains no allegations that Principal Financial was involved in the transactions at issue. (Def. Mem. in Supp. at 8). Plaintiffs seek to meet this contention by citing authorities relating to alter ego status and fraud, but Plaintiffs fail to adequately allege either of these conditions in the AC.

However, under 26 C.F.R. § 1.408-2 (e)(5)(i)(A)(1), if that section has been incorporated into the contract as alleged, "the owner or directors of the applicant will be responsible for the proper exercise of fiduciary powers by the applicant." This responsibility of Principal Financial is sufficient to defeat the Defendants' motion with respect to Principal Financial.[2]

## IV. **Plaintiffs' New Allegations Regarding a Lack of a Contract Are Rejected**

---

[2] Defendants have brought the order dismissing claims in Mandelbaum v. Fiserv, Inc., 09 Civ. 752, at *9-12 (Mar. 29, 2011), to the Court's attention, in which claims against the parent company were dismissed. However, the Mandelbaum opinion does not consider 26 C.F.R. § 1.408-2(e)(5)(i)(A)(1).

The AC alleged that Plaintiffs entered into a "trust agreement" with Principal Trust and that all Plaintiffs entered into this same "form contract." AC ¶¶ 62, 64, 67, 92, 94, 123, 125. Plaintiffs quoted from the contract in the AC (AC ¶¶ 95, 126), and it formed the basis for their breach of contract claim (AC ¶¶ 91-105). Defendants attached to their motion to dismiss the contracts in force and governing Plaintiffs' accounts during the relevant time period, all of which contained identical terms, identifying them as the "Trust Agreement." The same contract has been incorporated into the pleadings without dispute in the parallel Grund case. Plaintiffs' Response does not appear to contest that the Trust Agreement is the document quoted in the AC and appears to accept that the Trust Agreement's terms governed Plaintiffs' relationship with Principal Trust. The Response also quotes from the Trust Agreement when describing Principal Trust's contractual duties. Pl. Response at 12-14, 22. Plaintiffs still refer to the Trust Agreement as containing the terms underlying their breach of contract claim. Id. at 12-13.

At various points in the Response, however, Plaintiffs challenge their own allegations of a uniform trust agreement,

suggesting that there was no uniform trust agreement at all.
Plaintiffs claim that they received only an "application,"
"disclosure form," various transfer documents, IRS documents,
(Pl. Response at 2), and a "letter of understanding" from
Principal Trust, and that they never received the SITRA
referenced and quoted in their complaint.  Id. at 12.  To
support these contentions, the Response attaches affidavits from
each individual plaintiff, as well as varying sets of what
appear to be IRA-related documents in each plaintiff's
possession.  The Response does not claim that the newly
referenced documents contain the alleged contractual terms upon
which Plaintiffs base the AC's breach of contract allegations.
See AC ¶¶ 32, 44, 59, 75, 81.  Plaintiffs do not attach or
identify any new trust agreement that they claim governs their
IRAs.

   Plaintiffs' new factual allegations, which contradict
the AC's allegation that all plaintiffs signed a form "trust
agreement" governing their IRAs, are rejected.  Compare AC ¶¶
62, 67, 91-105.  Plaintiffs cannot use their briefs to disavow
the allegations in their complaint.  Shervington v. Village of
Piermont, No. 09 Civ. 4273, 2010 WL 93158, at *6 (S.D.N.Y. Jan.

8, 2010) withdrawn in part on other grounds in 732 F. Supp. 2d 423 (S.D.N.Y. 2010) (citations omitted); G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 265-66 (S.D.N.Y. 2001) (Sweet, J.) ("It is inconsistent with the standards for resolving a motion to dismiss to have this Court draw inferences from facts not pleaded in the Complaint.").

Defendants contend that Plaintiffs' refusal to recognize the contract governing their relationship with Defendants and forming the basis for their breach of contract claim merits dismissal of that claim.  While this invitation is tempting, for the sake of efficiency the breach of contract claims will be evaluated as alleged in the AC.

## V.   The Federal Breach of Fiduciary Duty Claims are Dismissed

### a. IRC Section 408 Does Not Give Rise to Actionable Duties

The AC bases its breach of fiduciary duty claim exclusively on allegations that Defendants violated "federal" duties rooted in Section 408 of the Internal Revenue Code ("IRC") and regulations thereunder.  See AC ¶¶ 55, 57.  However,

10

as explained in Grund, Section 408 does not give rise to any independent cause of action or actionable duties, and any claim that it does is "frivolous."  Sirna v. Prudential Secs., Inc., No. 95 Civ. 8422, 95 Civ. 9016, 96 Civ. 4534, 1997 WL 53194, at *2 (S.D.N.Y. Feb. 10, 1997).  Therefore, Plaintiffs' breach of fiduciary duty claim fails as a matter of law.

Although § 408 sets forth a series of statutory guidelines for IRAs seeking tax-deferred status, see 26 U.S.C. § 408, the Honorable Lewis Kaplan in a well-reasoned opinion recognized the limited scope of § 408: "Section 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment...."  Sirna, 1997 WL 53194, at *3 (involving the alleged failure of an IRA trustee to properly manage beneficiary funds).  Judge Kaplan dismissed as "frivolous" the plaintiff's argument that an IRA trustee's alleged failure properly to manage an account somehow "violated" § 408's tax deferral protocol:

> [T]here is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action against errant fiduciaries.  When Congress did intend to create such private rights of action, it did so unambiguously, as in Title I of ERISA.  Furthermore,

actions for breach of fiduciary duty are traditionally
matters of state law.

1997 WL 53194, at *3.  He held that "there is no implied cause

of action against allegedly errant IRA fiduciaries under Section

408 of the Internal Revenue Code."  Id.  See also Reynolds v. De

Silva, No. 09 Civ. 9218, 2010 WL 743510, at *7 (S.D.N.Y. Feb.

24, 2010) ("there is no private right of action for violations

of the IRC"); Hines v. Fiserv, Inc., No. 08 Civ. 2569, 2010 WL

1249838, at *2 (M.D. Fla. Mar. 25, 2010).  The conclusions

reached in Sirna are equally applicable here.


### b. Plaintiffs' ERISA Claims are Dismissed for Lack of Standing and Failure to State a Claim

At paragraph 55, the AC also cites ERISA as a basis

for Plaintiffs' breach of fiduciary duty claims.  To the extent

Plaintiffs make a claim under ERISA, it also fails.


If Plaintiffs could state a claim under ERISA, all of

their other claims would be preempted.  Section 514(a) of ERISA

states that ERISA "shall supersede any and all State laws

insofar as they may now or hereafter relate to any employee

benefit plan described in section 1003(a) of this title and not

12

exempt under section 1003(b) of this title." 29 U.S.C. §

1144(a). The term "State law" includes not only "all laws,

decisions, rules, regulations, or other State action having the

effect of law," 29 U.S.C. § 1144(c)(1), but also state law

breach of contract and tort claims involving an ERISA plan.

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-57 (1987).


Only plaintiffs who are properly considered

"participants" or "beneficiaries" (or "fiduciaries") of an

employee benefit plan have standing to sue under ERISA. See

Caltagirone v. NY Cmty. Bancorp, Inc., 257 Fed. Appx. 470, 472

(2d Cir. 2007); Central States Se. & Sw. Areas Health & Welfare

Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 200-01 (2d

Cir. 205); DaPonte v. Manfredi Motors, Inc., 157 Fed. Appx. 328,

331 (2d Cir. 2005) (quoting Aetna Health Inc. v. Davila, 542

U.S. 200, 210 (2004)). Therefore, Plaintiffs must properly

allege facts establishing that they are ERISA "participants" or

"beneficiaries" in order to survive a motion to dismiss. See

O'Shea v. Litteton, 414 U.S. 488, 494 (1974) ("if none of the

named plaintiffs purporting to represent a class establishes the

requisite of a case or controversy with the defendants, none may

seek relief on behalf of himself or any other members of the

class.") (citations omitted).  The AC does not allege an ERISA

"employee benefit plan," or that any of the Plaintiffs are

"participants" in, or "beneficiaries" of, any such plan.

Accordingly, Plaintiffs lack standing to sue under ERISA.

Caltagirone, 257 Fed. Appx. at 473; Teagardener v. Republic-

Franklin Inc. Pension Plan, 909 F.2d 947, 951-54 (6th Cir. 1990)

(affirming dismissal of ERISA claim for lack of standing).


          Moreover, IRA accounts like those Plaintiffs held are

explicitly carved out of the scope of ERISA.  See 29 U.S.C. §

1051(6) (exempting from coverage under Title I of ERISA "an

[IRA] or annuity described in section 408 of [the Code]"); 29

C.F.R. § 2510.3-2(d)(1) ("For purposes of title I of [ERISA],

the terms 'employee pension benefit plan' and 'pension plan'

shall not include an [IRA] described in section 408(a) of the

Code.")  Courts have repeatedly held that ERISA does not apply

to IRAs.  See, e.g., Rose v. The Long Island R.R. Pension Plan,

828 F.2d 910, 913 (2d Cir. 1987); Charles Schwab & Co. v.

Debickero, 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are

specifically excluded from ERISA's coverage" because IRAs

involved "no employer oversight, no ongoing employer commitment,

nor any potential for employer abuse").

14

Plaintiffs have not alleged that there is any ERISA-covered employee benefit plan at issue, or that any named plaintiff was the beneficiary of such a plan.   Therefore, Plaintiffs have failed to establish their standing under ERISA.

Plaintiffs also have not established any ERISA rights. It would appear that Plaintiffs seek to establish a private right of action under ERISA.

Title I of ERISA sets forth "rules for reporting and disclosure, vesting, participation, funding, fiduciary conduct, and civil enforcement" relating to "employee benefit plans,"[3] and explicitly carves out IRAs.   Title II of "ERISA" consists of various amendments made to the Internal Revenue Code at the time of ERISA's passage, including § 408's provision of IRA

---

[3] "Employee benefit plan" is defined under ERISA as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).  A "participant" includes "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).  Plaintiffs do not fall within this umbrella.

15

guidelines.  See 26 U.S.C. § 401 et seq.; 26 U.S.C. § 408.

Title II does not give rise to an enforceable fiduciary duty

claim, and, although technically part of the "ERISA statute,"

Title II is not generally what courts refer to when describing

"ERISA claims."  See, e.g., Metz v. Indep. Trust Corp., 994 F.2d

395, 399-400 (7th Cir. 1993) ("[Plaintiff's] IRA is not even

governed by ERISA"); In re Houck, 181 B.R. 187, 191-92 (Bankr.

E.D.Pa. 1995) ("IRAs are tax qualified... but they are not

subject to ERISA").  To the extent they are alleged, the ERISA

claims are dismissed for lack of standing and failure to state a

claim.


        Plaintiffs contend that they add claims for breach of

fiduciary duty under the common law, citing AC paragraph 98.

That paragraph, which is found under the heading of Plaintiffs'

breach of contract claim, states plainly: "Defendants failed to

perform there [sic] common law duties, the federal fiduciary

standards, the common law fiduciary standards and the terms of

the trust agreements."  AC ¶ 98.  Plaintiffs make such

boilerplate allegations again at paragraphs 107 (discussing

their negligence claims) and 132 (discussing their negligent

misrepresentation claims).  Common law claims are never

mentioned in the general allegations of the complaint or those allegations pertaining to Plaintiffs' breach of fiduciary duty claims, nor are they incorporated by reference. Rather, as noted above, Plaintiffs rely on Section 408, regulations promulgated under that section, and ERISA. AC ¶¶ 54, 55, 58. Plaintiffs' various references to fiduciary duties throughout the AC appear to refer to these federal duties (which overlap with their contractual duties). Plaintiffs' vague references among paragraphs discussing other claims are insufficient to state a plausible claim for common law breach of fiduciary duty. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

## VI. Plaintiffs' State Law Claims are Dismissed in Part and Survive in Part

### a. Delaware Law Applies to the Contract Claims While New York and New Jersey Law Apply to the Tort Claims

A federal district court applies the choice-of-law rules of the State in which it sits. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). In New York, "[i]t is well settled that courts will enforce a choice of law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." Lupien v. Lupien, 819 N.Y.S.2d 785, 785-86

(4th Dept. 2009) (internal citations and quotation marks
omitted).  The SIRTA governing the parties' relationship
contains a choice of law provision that states: "This Trust
Agreement is made pursuant to and shall be construed in
accordance with the laws of the State of Delaware."  SIRTA §
5.8(K).  As Plaintiffs allege, Delaware Charter Guarantee &
Trust Company is organized under the laws of Delaware with its
principal place of business in Wilmington, Delaware.  As a
result, this Court will enforce the Trust Agreement's choice of
law clause and apply Delaware law with respect to Plaintiffs'
breach of contract claims.


          Under New York choice of law rules, tort claims are
outside the scope of contractual choice of law provisions.
Plymack v. Copley Pharm., Inc., No. 93 Civ. 2655, 1995 WL
606272, at *5 (S.D.N.Y. Oct. 12, 1995) (Under New York law, "[a]
contractual choice-of-law provision... does not bind the parties
with respect to non-contractual causes of action.") (citing
Fustok v. Conticommodity Servs., Inc., 618 F. Supp. 1082, 1089
(S.D.N.Y. 1985)).  To determine which law applies in a tort
action, New York courts apply an "interest analysis," under
which the law of the jurisdiction with the greatest interest in

18

the litigation applies.  AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992) (citing Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197 (1985)); see also Babcock v. Jackson, 12 N.Y.2d 473, 481-82 (1963).  "Two separate inquiries are... required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss."  Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521 (1994) (citing Schultz, 65 N.Y.2d at 198).  Where the laws alleged to be in conflict are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  Cooney v. Osgood Mach., 81 N.Y.2d 66, 72 (1993); see also Ackerman v. Price-Waterhouse, 683 N.Y.S.2d 179, 189 (1st Dept. 1998) (quoting Cooney, 81 N.Y.2d at 72); In re New York City Asbestos Litigation, No. 190078/08, 2011 WL 921366, at *4 (N.Y.Sup. Mar. 11, 2011) (quoting Cooney, 81 N.Y.2d at 72).  "With respect to tort claims, this is usually the state where the tort took place."  In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 311 (S.D.N.Y. 2004).  In cases such as this, the locus of the tort tends to be where the alleged victims resided,

19

as that is the locus of their economic loss.  Id.  See also Bon
Jour Group, Ltd v. Elan-Polo, Inc., No. 96 Civ. 6705, 1997 WL
401814, at *4 (S.D.N.Y. July 16, 1997) ("where the location of
the alleged tort is not apparent, the tort is deemed to occur
where the party resides and sustained an economic loss resulting
from the tort") (citation omitted).  On the other hand, where
the conflicting laws are loss-allocating, "other factors are
taken into consideration, chiefly the parties' domiciles."  New
York City Asbestos Litigation, 2011 WL 921366, at *4 (quoting
Cooney, 81 N.Y.2d at 72).

        Here, Plaintiffs allege that Defendants breached their
duties of care, committed and aided fraud, and were otherwise
negligent or intentionally inadequate in fulfilling their
obligations to Plaintiffs.  These alleged legal duties are
conduct-regulating.  In terms of contacts, Defendants are
Delaware corporations with their primary places of business in
Delaware and Iowa.  Plaintiffs resided in New York and New
Jersey when injured.  The parties agree that the Court should
apply the laws of these two jurisdictions, as they represent the
locus of the harm.

**b.** **The Motion to Dismiss the Contract Claims is Granted in Part and Denied in Part**

Throughout the AC, Plaintiffs allege that Defendants breached various duties under the SITRA: (1) "Defendants had an implied obligation to preserve and maintain the trust funds, including but limited [sic] exercising due diligence to determine where the IRA funds were maintained and that these funds were not commingled by Nicholson, Westgate and the Westgate entities" (AC ¶ 96); (2) "Defendants wholly failed and consciously avoided an administrative review of the investment offering materials that would have provided an indicator of a fraud and at the very least cause Defendant to audit the books of Nicholson, Westgate and Westgate Affiliates" (AC ¶ 43); (3) Defendants failed to provide Plaintiffs with annual reports of all transactions related to the IRA as set forth in the IRS Opinion Letter included in the application booklet (AC ¶ 102); (4) Defendants failed to "to protect and preserve the funds received from Plaintiff" (AC ¶ 65); (5) Defendants' failed to provide accurate annual statements to Plaintiffs regarding the annual profit or loss in their accounts (AC ¶ 68); (6) Defendants failed to provide accurate statements of the account activity in Plaintiffs' accounts at Westgate (AC ¶ 70); (7)

Defendants failed to "determine the trust funds [sic] existence
and that the funds were not commingled"  (AC ¶¶ 97, 98, 101);
and (8) Defendants did not review the Westgate reports and
verify information provided by Westgate (AC ¶¶ 76, 99, 100).

The Trust Agreement itself charges Principal Trust
with three main duties: (1) to accept contributions and make
investments "in accordance with the instructions of the Account
Holder," including "through the facilities of [a] Brokerage
Firm" selected by the Account Holder (Trust Agreement ¶¶ 5.1(E),
5.5(G)); (2) to make distributions out of the IRA account "on
the written directions of the Account Holder" (Trust Agreement ¶
5.3(A)); and (3) to perform limited administrative services with
respect to the accounts, including rendering accountings
(including through information supplied in broker-dealer
statements) (Trust Agreement ¶ 5.5(N)).

Defendants contend that they have complied with all of
their contractual obligations.  However, such claims lead to
factual disputes which, along with the interpretation of
ambiguous contract provisions, are inappropriate for resolution
on a motion to dismiss, where allegations are taken as true and

read in a light most favorable to plaintiffs.  See In re Morgan
Stanley ERISA Litig., 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009).

        For the most part, Plaintiffs do not cite to specific
provisions of the Trust Agreement which have allegedly been
breached, leaving the Court to surmise as to what contract terms
are actually at issue.

        With regard to breach of contract allegations (1),
(2), (4), and (7) listed above (involving a duty to protect and
prevent the commingling of funds and conduct an administrative
review), SITRA § 5.5(P) provides that "[t]he Trustee shall be
under no duty to… review or monitor any securities or other
property held in Trust."  Plaintiffs do not cite any
contractually-required administrative review or investigation of
Westgate in order to prevent the commingling of funds.  IRC §
408(a)(5) and 26 C.F.R. § 1.408-2(b)(5)(i) prevent the
commingling of IRA funds, but even if it is assumed that such a
duty is read into the SIRTA by its stated purpose ("to establish
a Traditional IRA under Internal Revenue Code ("Code") Section
408(a)"), Plaintiffs have not established that Defendants
actually commingled their funds or should be liable for

                            23

commingling done by Westgate.  See Metz v. Indep. Trust Corp.,
994 F.2d 395, 402 (7th Cir. 1993) (IRA trustees such as
Principal Trust cannot be held liable for a third party's
alleged breaches of trust).  Therefore, Plaintiffs' breach of
contract allegations regarding administrative review, the duty
to investigate, and commingling of funds are dismissed.

With regard to breach of contract allegations (3),
(5), (6), and (8) listed above (involving the provision of
account reports), SIRTA § 5.5(N) provides as follows:

> Within ninety (90) days from the close of each Trust
> Year, the Trustee shall render an accounting, valuing
> the assets at fair market value, to the Account
> Holder.  The accounting may consist of copies of
> regularly issued broker-dealer statements to the
> Trustee and copies of mutual fund, insurance company,
> and other investment summary account statements
> supplied to the Trustee.  The Account Holder must file
> any exceptions or objections to the accounting with
> the Trustee in writing, within sixty (60) days of the
> mailing of such accounting.  In the absence of such
> filing, the Account Holder shall be deemed to have
> approved such account; and in such case, or upon the
> written approval of the Account Holder of any such
> account, the Trustee shall be released, relieved and
> discharged with respect to all matters and things set
> forth in such account as though such account had been
> settled by the decree of a court of competent
> jurisdiction.  No person other than the Account Holder
> may require an accounting or bring any action against
> the Trustee with respect to the Trust or its actions
> as Trustee.

24

The AC alleges that Defendants provided inaccurate
reports which they should have verified. SIRTA § 5.5(N) makes
clear that Plaintiffs had no obligation to independently
formulate the statements they sent to Plaintiffs. However, the
SITRA does not clearly excuse Defendants for supplying
inaccurate statements or failing to verify their contents before
passing them along to Plaintiffs, especially where, as alleged,
Defendants knew or should have known that Westgate's statements
were falsified.

Defendants contend that the SIRTA's exculpatory
language immunizes them from Plaintiffs' breach of contract
claims. However, the exculpatory language in the agreement does
not clearly apply to Plaintiffs' claims regarding annual
reports. Therefore, these breach of contract claims survive the
exculpatory language at this stage. Furthermore, the SIRTA
itself acknowledges in § 5.8(B) that the trustee may be liable
for intentional misconduct or negligence, both of which are
alleged with regard to Defendants' breaches of the SITRA.

Plaintiffs' breach of contract claims also appear to
be based in part on various "letters" Principal Trust allegedly

25

sent to Plaintiffs.  AC ¶¶ 51, 52, 59, 60, 61, 102.  However, Plaintiffs never actually allege that these letters constituted contracts.  By and large, the letters are alleged to promise nothing more than that Defendants will follow through on their duties as trustees under the SITRA, though Plaintiffs allege that Defendants failed to provide Plaintiffs with reports of all transactions related to the IRA based on an "IRS letter in Application Booklet."  AC ¶¶ 60, 102.  Plaintiffs have sufficiently identified the letters at issue but have not sufficiently alleged that they constitute agreements between the parties which Defendants then breached.  As such, these claims are dismissed.

### c. The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims

Defendants contend that the economic loss rule bars all of Plaintiffs' tort claims. (Def. Mem. in Supp. at 18-19).

Where plaintiffs allege primarily economic loss as an injury in a tort claim, "'the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.'"  In re Adelphia Communications Corp., No. 02-

26

41729, 2007 WL 2403553, at *9 (Bankr. S.D.N.Y. Aug. 17, 2007)

(citation omitted); Dean v. Barrett Homes, Inc., 968 A.2d

192,202 (N.J. Super. Ct. App. Div. 2009) (describing standards

similar for motion to dismiss purposes).  The purpose of the

rule is:

> [T]o keep contract law from drown[ing] in a sea of
> tort ... [and with this goal in mind] New York courts
> restrict plaintiffs who have suffered economic loss,
> but not personal or property injury, to an action for
> the benefits of their bargains.  Thus, [i]f the
> damages suffered are of a type remediable in contract,
> a plaintiff may not recover in tort.

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A, 244

F.R.D. 204, 220 (S.D.N.Y. 2007) (quotation marks and citations

omitted).  See also Dean, 968 A.2d at 202.  "Moreover, by

preventing the encroachment of tort law into the domain of

contract, the economic loss doctrine protects parties' abilities

to allocate risk by mutual agreement and thereby form reliable

expectations about their potential financial exposure with

respect to the duties and liabilities that they have

contractually assumed."  Travelers Cas. and Sur. Co. v.

Dormitory Authority - State of New York, 734 F. Supp. 2d 368,

379 (S.D.N.Y. 2010).  See also Alloway v. General Marine Indus.

27

L.P., 149 N.J. 620, 628 (N.J. 1997) (economic loss doctrine

allows parties to allocate risk).


            As stated by the New York Court of Appeals,


    [A] defendant may be liable in tort when it has
    breached a duty of reasonable care distinct from its
    contractual obligations, or when it has engaged in
    tortious conduct separate and apart from its failure
    to fulfill its contractual obligations.  The very
    nature of a contractual obligation, and the public
    interest in seeing it performed with reasonable care,
    may give rise to a duty of reasonable care in
    performance of the contract obligations, and the
    breach of that independent duty will give rise to a
    tort claim.  Where a party has fraudulently induced
    the plaintiff to enter into a contract, it may be
    liable in tort, or where a party engages in conduct
    outside the contract but intended to defeat the
    contract, its extraneous conduct may support an
    independent tort claim.  Conversely, where a party is
    merely seeking to enforce its bargain, a tort claim
    will not lie.

New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (N.Y.

1995).


        Significantly, the SIRTA explicitly carves out claims

of negligence and intentional conduct from its coverage.

Section 5.8(B) provides that "[t]he Trustee shall not be liable

for any act or omission made in connection with the Trust except

for its intentional misconduct or negligence."  Plaintiffs' tort

28

claims based in negligence and intentional misconduct thus seek
to enforce duties outside of the contract and cannot be
precluded by Plaintiffs' contract claims.

As noted above, the purpose of the economic loss
doctrine is to allow parties to allocate risk.  In light of
SIRTA § 5.8(B), it would be improper to apply the economic loss
doctrine to dismiss Plaintiffs' tort claims.

### d. Plaintiffs Adequately Plead Their Negligence and Gross Negligence Claims

To establish a prima facie case of negligence, a
plaintiff must establish "(1) a duty of care owed to plaintiff
by defendant, (2) a breach of that duty by defendant, (3)
proximate cause, and (4) actual damages." Brunson v. Affinity
Fed. Cred. Union, 199 N.J. 381, 400 (2009). See also Jiminez v.
Shahid, 2011 N.Y. Slip Op. 03212, 2011 WL 1499905, at *1 (2d
Dept. Apr. 19, 2011) (same).  A "gross negligence" claim
requires a further showing of "reckless disregard for the rights
of others, bordering on intentional wrongdoing." Cowsert v.
Macy's East, Inc., 904 N.Y.S.2d 239, 240 (3d Dept. Jun. 3, 2010)
(citations omitted); see also Lehigh Valley R.R. Co. v.

29

Stevenson, 17 F.2d 748, 750-51 (3d Cir. 1927) (gross negligence

implies "a disregard of consequences or a willingness to inflict

injury."); Zhang v. Ridgewood YMCA, NO. A-3485-09T2, 2011 WL

589586, at *4 (N.J. Super. A.D. Feb. 22, 2011) ("Gross

negligence requires indifference to consequences and may be

equated to willful or wanton conduct") (internal citations and

quotations omitted).


     The Defendants urge dismissal of the Plaintiffs'

claims of negligence and gross negligence because of the absence

of any duty beyond the SIRTA.   (Def. Mem. in Supp. at 21-22.)


     Plaintiffs appear to allege duties to investigate

Westgate in light of red flags (AC ¶ 4); to obtain and hold

documents from Westgate (AC ¶¶ 8, 40); to send accurate reports

of asset values (AC ¶ 42); and to maintain, preserve and monitor

the trust assets in order to prevent wrongful dissipation (AC ¶

110).   These duties are alleged to arise from Defendants'

position as a trustee with expertise in IRA custodianship.   AC

¶¶ 7, 41, 42, 108-09.  Plaintiffs have sufficiently pleaded

Defendants' duties, along their subsequent breach and damages.


30

The AC further alleges that Defendants deliberately breached their duty of care because they benefitted from the Westgate scheme and did not want to undermine that relationship or uncover facts which could destroy it. AC ¶¶ 4, 8, 40. This conduct was allegedly intentional, or at least exhibited a reckless disregard for consequences, and is sufficient to form the basis of a claim for gross negligence. See Cowsert, 904 N.Y.S.2d at 240; Zhang, 2011 WL 589586, at *4.

As discussed above, the SIRTA itself acknowledges in § 5.8(B) a liability for intentional misconduct or negligence by the trustee. This acknowledgement trumps Defendants' contention that the SITRA bars Plaintiffs' negligence claims.

### e. The Motion To Dismiss The Unjust Enrichment Claim Is Granted

To state a claim for unjust enrichment in New York[4], a plaintiff must allege that: (1) the defendant was enriched; (2)

---

[4] Under New York choice of law rules, interest analysis is applied to claims arising in equity, such as claims for unjust enrichment. See In re Hydrogen, LLC, 431 B.R. 337, 359 (Bkrtcy S.D.N.Y. 2010) (citing Icebox-Scoops, Inc. v. Finanz St. Honore, B.V., 676 F. Supp. 2d 100, 109-10 (E.D.N.Y. 2009) (applying New York's interest analysis to determine the governing law for an unjust enrichment claim); In re Grand Theft Auto Video Game Consumer Litigation, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying the "significant-contacts test" to unjust enrichment claims.) As with the tort claims, the

the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution.  Intellectual Capital Partner v. Institutional Credit Partners LLC, No. 08 Civ. 10580, 2009 WL 1974392, at *8 (S.D.N.Y. Jul. 8, 2009).  See also VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (under New Jersey law, unjust enrichment claims require a plaintiff to "show both that defendant received a benefit and that retention of that benefit without payment would be unjust.").  Unjust enrichment does not require a direct relationship between the parties.  See In re Canon Cameras Litig., No. 05 Civ. 7233, 2006 WL 1751245 at *2 (S.D.N.Y. June 23, 2006); see also Cox v. Microsoft Corp., 8 A.D.3d 39, 40-41 (1st Dept. 2004).

The AC has alleged that Defendants received fees from Plaintiffs while unjustifiably failing to perform their duties under the agreement.  AC ¶¶ 82, 172, 174.

However, under the law of New York and New Jersey, the existence of a valid and enforceable contract governing a

states in which Plaintiffs resided have the most significant contacts, as they are the places of contracting, where performance was to occur, and where Plaintiffs suffered losses.  Grand Theft Auto, 251 F.R.D. 149-50.  In this case, these states are New York and New Jersey.

particular subject matter precludes recovery for unjust enrichment arising out of the same matter. See Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.") (internal quotation marks and citations omitted; emphasis in original); Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 994 (S.D.N.Y. 1989) ("Unjust enrichment is designed to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other person's expense.") (internal quotation marks and citation omitted); Shalita v. Twp. of Wash., 636 A.2d 568, 571, 270 N.J. Super. 84, 90 (N.J. Super. Ct. App. Div. 1994) ("It has been said that [q]uasi-contract liability [should] not be imposed... if an express contract exists concerning the identical subject matter.") (alteration in original; citations omitted). Plaintiffs cannot raise an unjust enrichment claim where, as here, a valid, enforceable contract governs their relationship

with Defendants.  Plaintiffs do not defend their unjust
enrichment claim in their Response.

Plaintiffs' unjust enrichment claim is dismissed.

### f. The Motion to Dismiss the Negligent Misrepresentation Claim is Granted

Plaintiffs fail adequately allege misrepresentations
in support of their negligent misrepresentation claim.  "Under
New York law, the elements for a negligent misrepresentation
claim are that (1) the defendant had a duty, as a result of a
special relationship, to give correct information; (2) the
defendant made a false representation that he or she should have
known was incorrect; (3) the information supplied in the
representation was known by the defendant to be desired by the
plaintiff for a serious purpose; (4) the plaintiff intended to
rely and act upon it; (5) the plaintiff reasonably relied on it
to his or her detriment." Hydro Investors, Inc. v. Trafalgar
Power Inc., 227 F.3d 8, 20-21 (2d Cir. 2000). See also Bondi v.
Citigroup, Inc., No. BER-L-10902-04, 2005 WL 975856, at *17
(N.J. Super. L. Div. Feb. 28, 2005) ("An incorrect statement,
negligently made and justifiably relied upon, may be the basis

for recovery of damages for economic loss or injury sustained as a consequence of that reliance.") (citing H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983)). As set forth in Dobroshi v. Bank of America, N.A., 886 N.Y.S.2d 106 (1st Dept. 2009), "'[l]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" Id. at 108 (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996)).

In assessing claims for negligent misrepresentation, courts in this district have applied the heightened pleading standards of Rule 9(b).  See Ebusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC, No. 08 Civ. 9101, 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (applying Rule 9(b) while noting that the Second Circuit has yet to determine if Rule 9(b) applies to negligent misrepresentation claims); AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) ("A claim for negligent misrepresentation must also satisfy the requirements of Rule 9(b)."); In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp.

35

2d 452, 495 (S.D.N.Y. 2006) ("Negligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)").  "To satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Wood v. Applied Research Assocs., Inc., 328 Fed. Appx. 744, 747 (2d Cir. 2009) (citations and internal quotation marks omitted).

It is unclear from the AC what false representation(s) Defendants are alleged to have made.  Plaintiffs' negligent misrepresentation count does not identify any particular "false statement," but rather repeats the panoply of "failure to investigate" allegations that underlie Plaintiffs' contract and fiduciary duty counts.  See AC ¶¶ 122-142.  It appears from these allegations that Plaintiffs allege that Defendants negligently misrepresented what they would and would not do under the SITRA.  Regardless, the AC is too vague to meet the pleading standards of Rule 9(b).

**g. The Fraud Claim is Dismissed**

36

Plaintiffs' fraud claim does not meet the heightened standards for pleading a fraud claim.  "To successfully plead a common law fraud claim, plaintiff must allege a 'material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"  S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996) (quoting Katara v. D.E. Jones Commodities, 835 F.2d 966, 970-71 (2d Cir. 1987)); Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 175 (2006) (applying a similar standard).

In order to successfully plead a fraud claim in federal court, a complaint "must specify the circumstances constituting fraud 'with particularity.'"  S.Q.K.F.C., Inc., 84 F.3d at 633 (quoting Fed. R. Civ. P. 9(b)).  As noted above, "[t]o satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Wood, 328 Fed. Appx. at 747 (citations and internal quotation marks omitted).

37

Plaintiffs contend that they need not plead fraud with particularity because the information Principal Trust allegedly withheld regarding the true value of Westgate's funds was in Principal Trust's "exclusive control."  Pl. Response at 29, citing ABF Capital Mgmt. v. Askin Capital Mgmt. L.P., 957 F. Supp. 1308 (S.D.N.Y. 1997).  However, ABF holds that Plaintiffs cannot be expected to plead detailed fraud allegations when the information relevant to their claim is in the exclusive possession of defendant at the time of pleading.  Id. at 1327. This holding does not apply here because the details of Westgate's fraud are in the public record.  Plaintiffs cite to the SEC's complaint in the AC.  AC ¶¶ 29-31.  Therefore, the information about the alleged fraud is not in Defendants' exclusive control.

Plaintiffs' fraud allegations plainly do not meet the pleading standards of Rule 9(b).  Plaintiffs' fraud count itself does not identify any fraudulent statement, but refers back to all of the previous allegations of the AC.  See AC ¶¶ 143-155. The body of the complaint does not contain sufficiently particularized allegations of fraud, either.  Plaintiffs do

38

allege that "Principal continuously sent inaccurate and
fraudulent IRS form letters and statements to Plaintiffs." AC ¶
42. However, this vague allegation is not accompanied by any
explanation of which particular "IRS form letter" or "statement"
was fraudulent, when each such statement was issued, what aspect
of the statement was fraudulent and why, or whether the
fraudulent information came from Defendants (as opposed to
Westgate).

   Plaintiffs have also failed to plead fraudulent
intent. Plaintiffs must allege facts that give rise to a strong
inference of fraudulent intent by "(1) alleging facts to show
that defendants had both motive and opportunity to commit fraud,
or by (2) alleging facts that constitute strong circumstantial
evidence of conscious misbehavior or recklessness." S.Q.K.F.C.,
Inc., 84 F.3d at 634 (citing Shields v. Citytrust Bancorp, Inc.,
25 F.3d 1124, 1128 (2d Cir. 1994)). See also Eurycleia
Partners, LP v. Seward & Kissell LLP, 12 N.Y.3d 553, 559 (2009)
(requiring a "reasonable inference") (citations omitted); Deco
Davis, Inc. v. Global Int'l Trading Co., No. ESX-L-8130-02, 2007
WL 1582976, at *5-6 (N.J. Super. App. Div. Jun. 4, 2007). The
AC contains no well-pleaded allegations that Principal Trust

39

knew of the Westgate Ponzi scheme before law enforcement
authorities detected it.  The AC also fails to adequately
explain why, if Defendants knew of the Westgate scheme, they
chose to cover it up.  The AC appears to cite the administrative
fees Defendants obtained from managing accounts at Westgate as
Defendants' motive for perpetrating fraud.  However, under the
SITRA, Principal Trust would collect such fees regardless of
which investment choices its Account Holders made.  Based on the
AC, Principal Trust would gain nothing by inducing Account
Holders' continued investment in a known Ponzi scheme but would
put itself at great risk.  Furthermore, the administrative fees
received by Defendants for hosting accounts invested in Westgate
are the sort of normal economic motivation that cannot suffice
as motive for fraudulent intent purposes.  See Cromer Fin. Ltd.
v. Berger, 137 F. Supp. 2d 452, 494-95 (S.D.N.Y. 2001) (citing
Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 127-28
(S.D.N.Y. 1997)).  See also Shields, 25 F.3d at 1130-31.


### h. The Aiding-and-Abetting Fraud Claim is Dismissed

            "A plaintiff alleging an aiding-and-abetting fraud
claim must allege the existence of the underlying fraud, actual

knowledge, and substantial assistance." <u>Oster v. Kirschner</u>, 905

N.Y.S.2d 69, 72 (1st Dept. 2010). <u>See also</u> <u>State v. Qwest</u>

<u>Commc'ns Int'l, Inc.</u>, 904 A.2d 775, 782-83 (N.J. Super. 2006)

(similar standard) (citations omitted). Plaintiffs fail to

allege that Defendants had actual knowledge of the Westgate

scheme.


     Similar to pleading fraudulent intent, "pleading

knowledge for purposes of an aiding and abetting claim requires

allegations of facts that give rise to a 'strong inference' of

actual knowledge." <u>Fraternity Fund Ltd.</u>, 479 F. Supp. 2d at

367-68 (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273 (2d

Cir. 2006)). To satisfy this standard, Plaintiffs must identify

"circumstances indicating conscious behavior by the defendant,

or a clear opportunity and a motive to aid the fraud. Ordinary

economic motive, however, is insufficient to support the latter

alternative." <u>Cromer</u>, 137 F. Supp. 2d at 494-95 (internal

quotation marks and citations omitted). The AC does not allege

that Defendants knew of the Westgate scheme. Rather, it alleges

that they should have investigated and uncovered it. As

discussed above in reference to Plaintiffs' fraud allegations,

Defendants had no motive to assist Westgate in perpetrating a

fraud on their investors, and any motive would have been ordinary economic motive.  Therefore, AC does not allege sufficient facts to give rise to a strong inference of actual knowledge in support of its aiding and abetting claim.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part.  Plaintiffs are granted leave to file an amended complaint with claims under state law within 60 days.

It is so ordered.

New York, NY
June  5  , 2011

ROBERT W. SWEET
U.S.D.J.

42